IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-CV-417-RLV-DCK

| | |
|---|---|
| BRYANT R. ASHCRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Defendant's Motion For Summary Judgment" (Document No. 15). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Bryant R. Ashcraft ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On June 4, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning January 1, 2010. (Transcript of the Record of Proceedings ("Tr.") 12, 116-117). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on September 14, 2010, and again after

reconsideration on December 13, 2010. (Tr. 12, 69-72, 79-82). In its "Notice of Reconsideration" the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 79).

Plaintiff filed a timely written request for a hearing on January 13, 2011. (Tr. 12, 83-84). On March 14, 2012, Plaintiff appeared and testified at a hearing before Administrative Law Judge Todd D. Jacobson ("ALJ"). (Tr. 12, 25-42). In addition, Robert H. Ballantyne, a vocational expert ("VE"), and Harry B. Crow, Jr., Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on April 13, 2012, denying Plaintiff's claim. (Tr. 9-19). Plaintiff filed a request for review of the ALJ's decision on May 1, 2012, which was denied by the Appeals Council on May 29, 2013. (Tr. 1-4, 7). The April 13, 2012 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 22, 2013. (Document No. 1). On November 15, 2013, the undersigned was assigned to this case as the referral magistrate judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 14) were filed February 17, 2014; and "Defendant's Motion For Summary Judgment" (Document No. 15) and "Defendant's Memorandum Of Law In Support Of Motion For Summary Judgment" (Document No. 16) were filed April 16, 2014. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing

disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 1, 2010, and the date of his decision.[1] (Tr. 12). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 18-19).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since January 1, 2010, his alleged disability onset date. (Tr. 14). At the second step, the ALJ found that bilateral knee degenerative joint disease, gout and obesity were severe impairments.[2] (Tr. 14). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work, with the following limitations:

> [H]e is limited to occasional climbing, balancing, stooping, crouching, kneeling and crawling. Further, he is limited to no concentrated exposure to hazards such as moving machinery or unprotected heights. Finally, the claimant is limited to "unskilled" work.

(Tr. 15). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

> the claimant's "medically determinable" "severe" impairments are at least theoretically capable of producing at least some of the general subjective symptoms alleged by the claimant. However, the claimant's testimony as to the specific intensity, persistence and limiting effects of his pain and other subjective symptoms is not persuasive in view of his daily activities and the inconsistencies in the record.

(Tr. 16). At the fourth step, the ALJ cited the testimony of the VE, and found that Plaintiff could not perform his past relevant work as a maintenance person and egg setter. (Tr. 18).

At the fifth and final step, "considering the claimant's age, education, work experience, and residual functional capacity" the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 18). The VE specifically testified that according to the factors given by the ALJ, occupations claimant could perform included: cashier (DOT # 211.462.010); cashier in a toll collecting setting (DOT # 211.462.038); and an office clerk (DOT # 207.685-014). (Tr. 19). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between January 1, 2010, and the date of his decision, April 13, 2012. Id.

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to give good reasons for the weight assigned to the opinions of Plaintiff's treating physicians; (2) the ALJ's step 3 determination is not adequately explained; and (3) the ALJ failed to "determine and articulate" the effect of Plaintiff's obesity at step 3 and step 4. (Document No. 14, pp.1-2). The undersigned will discuss each of these contentions in turn.

**A.    Treating Physicians' Opinions**

In his first assignment of error, Plaintiff asserts that the ALJ failed to provide good reasons for the weight assigned to the treating physicians' opinions. (Document No. 14, p.9). Plaintiff specifically argues that the ALJ "gives little weight to the opinions of Ashcraft's

treating physician, Dr. Meade, a board certified orthopedic surgeon and Ashcraft's primary care physician, Dr. Laguerre," and "does not follow the procedure mandated by 20 CFR § 404.1527(c)" or "identify specific inconsistent evidence." Id. Plaintiff further asserts that "if the ALJ rejects the opinion completely, he must then give specific legitimate reasons for doing so." (Document No. 14, p.10) (citing Langley v. Barnhart, 373 F.3d 1116 (10th Cir. 2004)).

As noted by Plaintiff, 20 C.F.R. § 404.527(c) sets the SSA's procedure for evaluating medical opinions. According to the regulation, if it is found that a treating source's opinion on the issue(s) of the nature and severity of an impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R. § 404.527(c)(2). The regulation further explains that unless the treating source's opinion is given controlling weight, all the following factors are considered in determining the weight to afford any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.527(c).

Plaintiff correctly notes that the ALJ gave "little weight" to Dr. Meade's opinion concerning Plaintiff's "ability to squat, stand and walk, as there is no indication that Dr. Meade administered a formal residual functional capacity test, nor are these findings consistent with the claimant's longitudinal medical history, observations and treatments including not being prescribed an ambulatory assistive device or a handicap parking sticker." (Document No. 14, pp.9-10) (quoting Tr. 17) (citing Tr. 282-289, 317-322, and 373-376). However, Plaintiff declines to mention that the ALJ afforded "substantial weight" to Dr. Meade's opinion "as far as claimant's arthritis and gout being 'severe' impairments." (Tr. 17) (citing Tr. 282-289).

7

Likewise, the ALJ gave "substantial weight" to Dr. Laguerre's opinion "as far as claimant's gout and arthritis being 'severe' impairments," but "little weight" to Dr. Laguerre's opinion supporting "disability." (Tr. 17) (citing Tr. 336-337). The ALJ explained that "while admirable, it appears that Dr. Laguerre is acting as a patient advocate instead of an impartial expert, since the longitudinal medical evidence does not support her opinion." Id.

Plaintiff concludes that the ALJ has failed to state "legitimate reasons" for rejecting certain parts of these treating physicians' opinions, thus suggesting that the ALJ has erred by failing to "give good reasons" pursuant to 20 C.F.R. § 404.527(c) for the weight he gave the treating sources' opinions. (Document No. 14, pp.10-14).

Defendant contends that substantial evidence supports the ALJ's decision. (Document No. 16, pp.4-8). Defendant argues that the ALJ discounted the opinions of Dr. Meade and Dr. Laguerre "because they were not consistent with Plaintiff's longitudinal medical history." (Document No. 16, p.4). In support of her argument, Defendant cites extensively to the medical records, including records cited by the ALJ's decision:

> . . . With respect to Plaintiff's arthritic knees, on December 12, 2009, an MRI of Plaintiff's knees showed degenerative changes in his left knee, but no other issues (Tr. 225-36). Based on his MRI, Plaintiff underwent injections to treat his knee pain (Tr. 297). On May 17, 2011, electrodiagnostic testing ruled out median, ulnar, and peripheral neuropathy (Tr. 348). In 2011, Dr. Laguerre noted that Plaintiff exhibited a normal gait on multiple occasions (Tr. 339-40, 383). On December 12, 2011, Dr. Jaffe noted that Plaintiff had reduced range of motion in his knees, exhibited a normal gait, and had normal musculature upon examination (Tr. 362). On January 9, 2012, Plaintiff reported that injections helped his knee pain (Tr. 373). He had a normal muscle exam and a normal gait (Tr. 373). He did not require any other injections in his knees (Tr. 374). He only reported "some pain" (Tr. 375). With respect to Plaintiff's gout, the record indicates that he was not compliant with his gout medication (Tr. 280, 371). On October 17, 2011, Plaintiff presented to Dr. Babich upon the referral of Dr. Laguerre (Tr. 368). After examining Plaintiff and reviewing his medical

> records, Dr. Babich opined that Plaintiff's persistent gout was a result of his failure to take his medications properly, and stated that compliance would eventually resolve Plaintiff's gout (Tr. 369).
>
> The consultative examination also supports the ALJ's decision. On July 24, 2010, Dr. Hillman performed a consultative examination of Plaintiff (Tr. 319). Plaintiff was able to get on and off the examining table, and up and out of a chair (Tr. 320). He was also able to dress and undress himself without pronounced difficulty (*id.*). Plaintiff exhibited a normal gait (Tr. 321). His grip strength was 5/5 bilaterally, and he had a good range of motion of all the joints of his hands (*id.*). He had some reduced range of motion in his knees, but had no evidence of instability (*id.*).
>
> Finally, the ALJ's decision was supported by the non-examining medical consultants, Drs. Koel and Huffman-Zechman, who opined that Plaintiff was capable of modified medium work (Tr. 50-51, 63-64).

(Document No. 16, pp.5-6).

Defendant notes that the ALJ gave "great weight" to the opinion of Dr. Babich, a board certified rheumatologist, and cited the longitudinal evidence of Plaintiff's medical history. (Document No. 16, p.6) (citing Tr. 17). As noted above, the ALJ also cited and relied upon medical evidence from Dr. Hillman and Dr. Jaffe. (Tr. 16). Defendant contends that the ALJ satisfied his duty pursuant to 20 C.F.R. § 404.527(c) "by stating that the opinions [of Meade and Laguerre] were inconsistent with the evidence." (Document No. 16, p.7) (citing Clontz v. Astrue, No. 2:12-CV-013-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013) (finding that the regulations do not require the ALJ to specifically discuss every factor in 20 C.F.R. § 404.1527(c)(2)); and Henley v. Astrue, No. 3:11-CV-488, 2012 WL 2804846, at *4 (W.D.N.C. Jul. 10, 2012) ( the ALJ implicitly ruled on the treating physician's opinion despite failing to explicitly discuss 20 C.F.R. § 416.927(c)(2) factors)).

The undersigned finds Defendant's arguments compelling. In short, it appears the ALJ relied on substantial evidence in determining the weight to give the opinions of Plaintiff's treating physicians. (Tr. 16-17).

**B.     Step 3 Determination**

Next, Plaintiff contends that the ALJ erred by failing to adequately explain his reasoning for finding that Plaintiff did not meet or equal the criteria of a Listing at Step 3. (Document No. 14, pp.17-18). Relying on Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), Plaintiff argues that the ALJ's failure to include an explanation in his decision regarding why a Listing is not met requires remand. (Document No. 14, p.18).

Notably, Plaintiff does *not* argue that his impairments actually meet or equal the criteria for a Listing; rather, he simply contends that the Court should remand this matter so an ALJ may explain *why* he does not meet or equal the criteria for a listing. In Radford, unlike the instant case, the plaintiff asserted in federal court "that the ALJ had erred by finding that Radford had not established that he met or equaled the Listing 1.04 impairments." Radford, 734 F.3d at 292 (citing Radford v. Astrue, 2012 WL 3594642, at *1 (E.D.N.C. Aug. 20, 2012)). The district court agreed with Radford, and concluded that he "fell within Listing 1.04A because all the required medical findings were present in [his] extensive medical record." Id.

Here, Defendant first notes that "the burden is on the claimant to establish that his impairment meets or equals a listing section." (Document No. 16, p.9) (citing Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Defendant goes on to argue that "any deficiencies in the ALJ's Listing analysis only constitutes reversible error if the record strongly suggests that Plaintiff's impairments met the Listings." (Document No. 16, p.9) (citing Radford, 734 F.3d at 295; Brown v. Colvin, 2014 WL 1282255, at *7 (E.D.N.C. Mar. 27, 2014) (holding that Radford only

10

applied where extensive medical treatment evidence existed); Reavis v. Colvin, 2014 WL 546106, at *20 (E.D.Va. Feb 10, 2014) (holding that Radford was not the basis for remand where the opinion, read as a whole, provided a basis for upholding the determination)).

Defendant further argues persuasively that:

> Plaintiff cannot demonstrate that his impairments meet the Listings. Plaintiff cannot demonstrate that he had an extreme limitation on his ability to walk. The record indicates that Plaintiff had a normal gait on multiple occasions (Tr. 321, 339-40, 362, 373, 383), and his knees responded well to injections (Tr. 373). In addition, as noted by the ALJ (Tr. 17) there is no evidence that any of Plaintiff's treating sources prescribed an assistive device. See Mitchell v. Colvin, 13-CV-42, 2014 WL 991705, at *2 (E.D.N.C. Mar. 13, 2014) (holding that substantial evidence supported the ALJ's finding that the degenerative joint disease in his knees did not meet the Listings because there was no evidence to support claimant's statement that he was unable to ambulate more than 40–50 feet, and evidence showed that at various points he demonstrated a normal, steady gait) (remanded on other grounds).
>
> . . . As such, Plaintiff failed to demonstrate how he was harmed by the ALJ's step-three finding, and this Court should affirm the ALJ's decision. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

(Document No. 16, pp.10-11).

Plaintiff also argues that the ALJ erred by failing to explain the finding that Plaintiff is limited to "unskilled" work. (Document No. 14, p.19-20) (citing Tr. 15). Again, Plaintiff does not explicitly contend that the ALJ's finding was incorrect, just that the case should be remanded for further explanation of the finding. Id.

Defendant counters that the ALJ's failure to find that Plaintiff's mental impairments were severe "is not reversible error because the ALJ continued with the sequential process, and assessed limitations based on his mental impairments." (Document No. 16, p.13) (citing Tr. 15-

18; and Stacey v. Astrue, 2011 WL 841356, at *3 (W.D.N.C. Jan. 28, 2011), aff'd by 2011 WL 873463 (W.D.N.C. March 7, 2011) (holding that an error at step two is harmless as long as the ALJ proceeds to step four)). Defendant further argues that

> the ALJ's omission of Plaintiff's mental impairments at step three did not constitute reversible error because, under Radford, the ALJ is only required to discuss whether an impairment meets a Listing where evidence in the record indicates that a claimant would likely meet a Listing. Radford, 734 F.3d at 295; Cook, 783 F.2d at 1172-1173; Brown, 2014 WL 1282255, at *7 (holding that Radford only applied where extensive medical treatment evidence existed). Neither Dr. Meade or Dr. Laguerre opined that Plaintiff was disabled based on his mental impairments (Tr. 287, 337). The treatment records contain little discussion of his depression (Tr. 268, 319-21, 330, 339,340, 346, 361-62, 365-69, 375-76, 382-83). Plaintiff cannot establish that his mental impairments met a listing.

(Document No. 16, pp.13-14).

After careful consideration of the foregoing, as well as the record and other arguments in the briefs, the undersigned is satisfied that the ALJ's decision relied on substantial evidence, and that his Step 3 finding does not require reversal or remand.

**C.     Obesity**

Finally, Plaintiff argues that the ALJ erred by failing to mention or consider the effects of Plaintiff's obesity at Step 3 as required by SSR 02-01p, and/or by failing to explain his analysis of Plaintiff's obesity at Step 4. (Document No. 14, pp. 18-21).

The undersigned notes the following excerpt from the ALJ's decision under step 2, where the ALJ determined that Plaintiff's obesity was a severe impairment:

> Further, there are no **Listing criteria in Appendix 1** specific to the evaluation of **obesity** impairments. However, **SSR 02-01p** requires consideration of **obesity** in determining whether a claimant has medically determinable impairments that are severe, and whether those impairments meet or equal **any listing**. The residual functional capacity assessment used at **steps 4 and 5** of the sequential evaluation process requires consideration of

> **obesity's impact** upon co-existing impairments. Therefore, the **residual functional capacity assessment that follows reflects** the degree of limitations that the undersigned has found with consideration of the **claimant's obesity**.

(Tr. 15).

Later, the ALJ notes that Dr. Babich opined that Plaintiff's gout attacks should stop occurring over the course of 2-3 years, if he complies with his treatment program including "exercise, weight loss and dietary therapies." (Tr. 16). In addition, the ALJ's decision states that Plaintiff "is obese with a body mass index over 30 and thus the undersigned has taken the claimant's obesity into consideration **pursuant to SSR 02-1p** in formulating the residual functional capacity notated above." (Tr. 17) (emphasis added).

Defendant responds that "because Plaintiff cannot demonstrate any limitations resulting from his obesity that exceed the ALJ's RFC finding, this Court should affirm the decision." (Document No. 16, p.11). Defendant argues that Plaintiff fails to articulate how obesity affected his work, or to make any citation to the medical record regarding Plaintiff's obesity. (Document No. 16, p.12). According to Defendant, the record only includes "a passing mention of obesity without more" and "no doctor has suggested any limitations based on Plaintiff's obesity." Id.

Based on the foregoing, the undersigned agrees that remand is not required for the ALJ to further consider Plaintiff's obesity. The undersigned is not persuaded that the ALJ's consideration of obesity in this decision was inadequate, and finds that the ALJ relied on substantial evidence in reaching his decision that Plaintiff was not under a disability during the relevant time period.

## IV. CONCLUSION

The undersigned is persuaded that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v.

Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 13) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 15) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: May 29, 2014

David C. Keesler
United States Magistrate Judge

14