**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-CV-00417-RLV-DCK**

| | | |
|---|---|---|
| **BRYANT R. ASHCRAFT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's Motion for Summary Judgment (Doc. No. 14); Defendant's Motion for Summary Judgment (Doc. No. 16); Magistrate Judge Keesler's Memorandum and Recommendation (the "M&R") (Doc. No. 17); and Plaintiff's Objections to Recommendation of United States Magistrate Judge (Doc. No. 18). The Magistrate Judge recommends that Plaintiff's motion be denied, that Defendant's motion be granted, and that the Commissioner's decision be affirmed.

Also before the Court are supplemental briefs filed by the parties in response to the Court's order dated May 21, 2015, wherein the Court requested that the parties consider whether additional briefing is necessary regarding the legal effect of the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) in so far as that decision pertains to the issues surrounding Plaintiff's claim of disability. Because Mascio was decided on March 18, 2015, the M&R does not discuss the applicability of that decision to the facts of this case or the issues raised by Plaintiff. For this reason, this Court will evaluate whether the holding enunciated in Mascio requires remand, despite the recommendation of the M&R.

Because the motions and briefs are filed and pending, this matter is now ripe for review.

For the reasons set forth more fully below, the Plaintiff's objections to the M&R are **OVERRULED AS MOOT** and the Court **DECLINES TO ADOPT** the recommendations contained in the Magistrate Judge's M&R as to the issues discussed therein. Based on the supplemental briefing of the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment. Accordingly, the Court **VACATES** the decision of the Commissioner and **REMANDS** this matter under Sentence Four for a rehearing and reassessment of the Plaintiff's residual functional capacity in a manner that is consistent with this Order.

## I.  PROCEDURAL SUMMARY

Plaintiff does not lodge any specific objections to the procedural or factual history contained in the M&R or the Administrative Law Judge's ("ALJ") decision. Therefore, the Court will primarily base its analysis on the procedural and factual history determined by the M&R and the ALJ's written decision. However, the Court will cite to (and discuss) other record evidence as is appropriate.

On June 4, 2010, Plaintiff Bryant R. Ashcraft filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 405. [Doc. No. 17] at p. 1. In his application, Plaintiff contends that he is unable to work due to an alleged disabling condition that began on January 1, 2010. Id. The Commissioner of Social Security (the "Commissioner" or "Defendant") first denied Plaintiff's application on September 14, 2010 and, upon reconsideration, again denied the application on December 13, 2010. [Doc. No. 17] at pp. 1-2. On January 13, 2011, Plaintiff timely filed a written request for a hearing. [Doc. No. 17] at p. 2. Plaintiff's request was granted and a hearing was held before Administrative Law Judge Todd D. Jacobson on March 14, 2012. [Doc. No. 17] at p. 2. At the hearing, Plaintiff testified in support of

his application. Id. The ALJ also heard testimony from Robert H. Ballantyne, a vocational expert. Id.

Shortly thereafter, the ALJ issued his decision denying Plaintiff's disability claim on April 13, 2012. The ALJ denied the claim on the basis that Plaintiff did not suffer from a statutorily-defined "disability" for the period between January 1, 2010 and the date of the decision. [Doc. No. 17] at p. 2; [Doc. No. 12-3] at pp. 13-20. Plaintiff timely requested review of the ALJ's decision on May 1, 2012. [Doc. No. 17] at p. 2. On May 29, 2013, the Appeals Council denied review of the ALJ's decision. Id. Consequently, as a matter of law, the ALJ's decision became the final decision of the Commissioner.

On July 22, 2013, Plaintiff filed his complaint with this Court for the purpose of seeking judicial review of the ALJ's April 13, 2012 decision. [Doc. No. 1]. Subsequently, Plaintiff and Defendant filed cross motions for summary judgment, which were referred to Magistrate Judge Keesler for a Memorandum and Recommendation. On May 30, 2014, the Magistrate Judge filed his M&R and recommended that the Commissioner's decision be affirmed. [Doc. No. 17]. Plaintiff timely filed his objections to the M&R on June 12, 2014. [Doc. No. 18]; see 28 USC § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D.N.C., L.R. 72.1(C).

While Plaintiff's objections to the M&R were pending, the Fourth Circuit issued its opinion in the case Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Out of an abundance of caution, this Court directed that all parties to any pending action which seeks review of a disability determination by the Commissioner file supplemental briefing with the Court for the purpose of discussing the applicability of Mascio, if any, to the facts and issues surrounding their respective cases. Plaintiff and Defendant determined that supplemental briefing was necessary and filed their supplemental briefs on May 9, 2015 and May 10, 2015, respectively. [Doc. No. 24]; [Doc. No.

25]. Together with Plaintiff's objections to the M&R, the Court has taken the parties' supplemental briefing under advisement and has considered the merits of their arguments prior to issuing this Order.

## II.    BACKGROUND

### A.    Proceedings Before the Administrative Law Judge

#### 1.    *ALJ's Five-Step Sequential Analysis*

The Social Security Administration has defined disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to last for a period of at least 12 months. 20 C.F.R. § 404.1505(a). To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 461 n.2, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983) (noting a "need for efficiency" in considering disability claims). If at any step of the sequential evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

To that end, federal law requires that an ALJ evaluate a claimant's application for disability benefits by considering whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment (i.e., from performing "other work"). 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. Grant v. Schweiker, 699 F.2d 189, 191 (4th

Cir. 1983). The claimant must prove disability on or before the last day of his insured status to receive disability benefits. Everett v. Sec'y of Health, Educ. & Welfare, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step-five, the burden of production shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, work experience, and residual functional capacity. Grant, 699 F.2d at 191.

2.      *ALJ's Written Decision*

Following a hearing and a review of the record evidence, the ALJ entered his decision denying disability benefits to the Plaintiff. In his decision, the ALJ made a variety of factual findings regarding the Plaintiff's work history, medical history, and medical conditions. At step-one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 1, 2010. [Doc. No. 12-3] at p. 15. At step-two, the ALJ found that the Plaintiff suffered from the following severe impairments: bilateral knee degenerative joint disease, gout and obesity.[1] Id. Further, the ALJ found that the Plaintiff suffered from a medically determinable mental impairment of "depression." Id. However, the ALJ determined this impairment was "nonsevere" because, in his view, the record evidence indicated that Plaintiff's "depression" caused "mild to no difficulties" in Plaintiff's activities of daily living and social functioning capabilities; "mild difficulties" in maintaining concentration, persistence or pace; and no episodes of decompensation. [Doc. No. 12-3] at pp. 15-16; see 20 CFR § 404.1520a; S.S.R. 96-8p, 1996 SSR LEXIS 5.

At step-three, the ALJ's written decision does not engage in an explicit discussion concerning whether one of the severe impairments highlighted in the step-two analysis fell within

---

[1]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

the realm of any "listed impairment." [Doc. No. 12-3] at p. 16. Instead, the ALJ summarily determined that Plaintiff's impairments, taken alone or in combination, do not "meet[] or medically equal[] the severity of one of the listed impairments" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>Id.</u>

Prior to beginning his step-four analysis, the ALJ determined the Plaintiff's residual functional capacity ("RFC"). Specifically, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) except he is limited to occasional climbing, balancing, stooping, crouching, kneeling and crawling. Further he is limited to no concentrated exposure to hazards such as moving machinery or unprotected heights. Finally, the claimant is limited to unskilled work.

[Doc. No. 12-3] at p. 16. The ALJ represented that in developing the RFC, he relied on his assessment of the Plaintiff's credibility, record evidence of the Plaintiff's longitudinal medical history, medical opinion evidence, and his assessment of the Plaintiff's severe and nonsevere impairments. <u>Id.</u> at pp. 16-19. Once the RFC was developed, the ALJ proceeded to steps four and five of his analysis.

At step-four, the ALJ found that the Plaintiff is unable to perform any past relevant work. <u>Id.</u> at p. 19. However, under the step-five analysis, the ALJ determined that Plaintiff is capable of performing the functions of other jobs. <u>Id.</u> at pp. 19-20. The ALJ based this finding on testimony given by the vocational expert. <u>Id.</u> The vocational expert noted that given the Plaintiff's age, education, experience, and residual functioning capacity, he would be able to perform the limited work-related functions associated with "light" and "unskilled" occupations, such as a cashier or office clerk. <u>Id.</u> The ALJ concluded that the occupations listed by the vocational expert exist in significant numbers in the national economy and thus a finding of "not disabled" was appropriate under 20 C.F.R. § 404.1505(a).

B.    Federal District Court Proceedings

Displeased with the ALJ's determination, Plaintiff filed suit in this Court for the purpose of seeking judicial review of his claim for disability. [Doc. No. 1]. Thereafter, Plaintiff filed a motion for summary judgment, wherein Plaintiff took exception to the Commissioner's decision on three grounds: (1) Whether the ALJ failed to adequately support and/or explain the limited weight accorded to certain aspects of the opinions of Dr. Meade and Dr. Laguerre respecting the extent to which Plaintiff's severe impairments affected his functional capabilities; (2) Whether the ALJ failed to "adequately explain" if "any of [Plaintiff's] severe impairments" met or equaled the criteria of a "Listing" at the step-three stage of the analysis; and (3) Whether the ALJ erred by failing to mention or consider the effects of Plaintiff's obesity at step-three and/or by failing to explain how obesity played a part in the development of Plaintiff's RFC. See [Doc. No. 14] at pp. 9-21. Defendant countered by arguing (1) substantial evidence supports the ALJ's decision to place little weight on the contested portions of the opinions of Plaintiff's treating physicians; (2) Plaintiff failed to satisfy his burden to "establish that his impairment meets or equals a listing section" under the step-three analysis; and (3) Plaintiff failed to cite any record evidence indicating how Plaintiff's obesity should have differentially impacted the ALJ's five-step analysis to such an extent that remand is appropriate. See [Doc. No. 16] at pp. 4-15.

In his Memorandum and Recommendation, the Magistrate Judge recommends that this Court deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. First, the M&R finds that Plaintiff's argument concerning the weight afforded certain opinion evidence lacks merit. In order to evaluate the merit of Plaintiff's argument, the Magistrate Judge looked to the medical records filed with the Court, as well as those cited by the ALJ. [Doc. No. 17] at pp. 7-10. Upon an evaluation of the whole record, the Magistrate Judge found that "the

ALJ relied on substantial evidence in determining the weight to give the opinions of Plaintiff's treating physicians." [Doc. No. 17] at p. 10 (citing [Doc. No. 12-3] at pp. 17-18).

Second, the M&R rejects Plaintiff's contention that the ALJ's step-three analysis requires remand. Regarding this contention, the Magistrate Judge found that Plaintiff carries the burden of offering proof and persuasive argument that he has an "impairment [which] meets or equals" a specific "listing section." [Doc. No. 17] at p. 10. Further, the Magistrate Judge observed that a failure to analyze the applicability of specific "listings" "constitutes reversible error [only] if the record strongly suggests that the Plaintiff's impairments met" a "listing." [Doc. No. 17] at p. 10 (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). The M&R found that Plaintiff made no argument that his impairments met or equaled any particular "listing." [Doc. No. 17] at p. 10. Further, the M&R indicates that, after reviewing the record and the ALJ's decision, the Magistrate Judge found that the record does not "strongly suggest" that Plaintiff's impairments met or equaled a "listing." Id. at pp. 10-12. Applying these standards, the Magistrate Judge was persuaded that the ALJ's step-three analysis is supported by substantial evidence. Id.

Third, the M&R rejects Plaintiff's contention that the ALJ failed to adequately consider his obesity impairment at the step-three analysis and in formulating Plaintiff's RFC. The M&R cites to several portions of the ALJ's written decision wherein the ALJ explicitly stated that Plaintiff's obesity was considered in arriving at his assessment of Plaintiff's disability and functional capacity. [Doc. No. 17] at pp. 12-13. Finding that the record does not support Plaintiff's argument that the "ALJ's consideration of obesity in th[e] decision was inadequate," the Magistrate Judge determined that the ALJ's scrutiny of Plaintiff's obesity satisfied the substantial evidence standard.

### III.    DISCUSSION

#### A.    Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner of Social Security is limited to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Rhyne v. Astrue, 2010 U.S. Dist. LEXIS 142595, *7-8 (W.D.N.C. 2011). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that his decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

While substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988), it is "more than a *scintilla* and must do more than create a suspicion of the existence of a fact to be established." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); Rhyne, 2010 U.S. Dist. LEXIS 142595, *8. Indeed, "[i]t means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." Smith, 782 F.2d at 1179; Rhyne, 2010 U.S. Dist. LEXIS 142595, *7-9. Critically, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 F. App'x 264, 266 (4th Cir. 2015). The standard is met by "less

than a preponderance" of the evidence. <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

"In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. <u>See</u> <u>Hays</u>, *supra*, at 1456; <u>Rhyne</u>, 2010 U.S. Dist. LEXIS 142595, *9.

Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether the ALJ's finding that he is *not* disabled is properly explained and supported by substantial evidence and that such decision was reached based upon a correct application of the relevant law.

B.     Issues Raised By Objection to the M&R

To assist it in its review of the Commissioner's denial of benefits, a court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of motions for summary judgment.]" 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which [specific] objection is made." <u>Id.</u> at § 636(b)(1). Absent a specific and timely filed objection, a court reviews only for "clear error," and need not give any explanation for adopting the M&R. <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

On June 12, 2014, Plaintiff filed his objections to the Magistrate Judge's M&R (the "Objection"). See, generally [Doc. No. 18]. Defendant summarily opposed the Plaintiff's Objection by filing a one page reply, which merely incorporated her summary judgment arguments and the findings of the Magistrate Judge. [Doc. No. 19] at p. 1.

In his Objection, Plaintiff first asserts a nonspecific objection by generally referring to the arguments contained in his summary judgment brief. See [Doc. No. 18] at p. 1. This is improper and Plaintiff's generalized, one-sentence "objection" does not trigger de novo review under the Federal Magistrates Act. 28 U.S.C. § 636(b)(1); see Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) ("[D]e novo review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."); Anderson v. Dobson, 627 F. Supp. 2d 619, 623 (W.D.N.C. 2007).

Following his patently improper first objection, Plaintiff makes only three short arguments in support of his brief. In short, Plaintiff objects that (1) the M&R improperly affirms the ALJ's decision to give "little" weight to the opinions of Drs. Meade and Laguerre respecting the functional limitations purportedly imposed upon Plaintiff as a result of his severe impairments by finding that it is supported by substantial evidence; (2) the M&R improperly places the burden on Plaintiff to argue that his impairments meet or equal an impairment specified in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1; and (3) the M&R improperly affirms the ALJ's analysis as it relates to Plaintiff's obesity. [Doc. No. 18] at pp. 2-8.

After a review and consideration of the record, the Court does not deem it proper to assess the Plaintiff's objections to the M&R. As will be explained below, the Court has determined that Mascio requires that the Commissioner's decision be vacated and remanded for further

administrative proceedings.

C.      Issues Raised By Supplemental Briefing

1.      *Whether The ALJ Properly Assessed Plaintiff's RFC In Light Of His*
        *Step-Two Finding That Plaintiff Suffers From A Mental Impairment*
        *And Resulting Limitations*

In his supplemental briefing, the Plaintiff essentially argues that the ALJ erred in assessing

his RFC under the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir.

2015). He argues that the ALJ's alleged conclusory RFC determination fails to explain *how* the

ALJ reached his RFC findings. Specifically, among others, Plaintiff makes the argument that the

ALJ should have conducted a "function-by-function" analysis and that Plaintiff's "mild"

limitations in his activities of daily living, social functioning, and ability to maintain concentration,

persistence, or pace, as determined by the ALJ, are not sufficiently addressed by a restriction to

"unskilled" work contained in both the RFC and the hypothetical given to the vocational expert at

Plaintiff's hearing. [Doc. No. 24] at pp. 5-6. Plaintiff argues that, under Mascio, a meaningful

review of the ALJ's RFC cannot be had because this Court is left "to guess what the ALJ's

conclusions are, why he reached those conclusions, and what evidence supports those

conclusions." Id. at pp. 3-4.

The Defendant counters by arguing that this case differs from Mascio because, here, the

ALJ determined the Plaintiff to suffer from "mild" limitations arising out of his nonsevere mental

impairment, whereas the claimant in Mascio suffered from "moderate" limitations arising from

two severe mental impairments. [Doc. No. 25] at p. 5. Defendant further argues that, even if

Plaintiff's mild limitations must be explicitly accounted for in the ALJ's RFC determination, he

did so by limiting the Plaintiff's RFC to "unskilled" work. Id. at pp. 5-6. Defendant also argues

that the record lacks evidence supporting Plaintiff's mental impairment. Id. at 6.

The Court agrees with Plaintiff that the ALJ's RFC analysis and hypothetical to the vocational expert were insufficient to address Plaintiff's mental impairment and mild limitations in his activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. Thus, because this Court cannot meaningfully review the ALJ's RFC determination, a remand is in order.

i.  ALJ's Obligations in Formulating an RFC

The Plaintiff has the burden of establishing his RFC by showing how his impairments affect his functioning. See 20 C.F.R. § 404.1512(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, 2011 U.S. Dist. LEXIS 155161, *7-8 (W.D.N.C. 2011) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC."), *adopted by* 2012 U.S. Dist. LEXIS 70954 (W.D.N.C. 2012) (Voorhees, J.), *aff'd by* 487 F. App'x 795 (4th Cir. 2012). An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 SSR LEXIS 5. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." S.S.R. 96-8p, 1996 SSR LEXIS 5. The RFC is based on all relevant medical evidence and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 SSR LEXIS 5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); see Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments

are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

The RFC is utilized by the ALJ at steps four and five to determine whether the claimant can perform past work and, if not, whether there is other work the claimant can perform. <u>See Mascio</u>, 780 F.3d at 636 (citing S.S.R. 96-8p, 1996 SSR LEXIS 5). Social Security Ruling 96-8p explains that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 SSR LEXIS 5, *19. Thus, a proper RFC is critical because "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional [or nonexertional] category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." S.S.R. 96-8p, 1996 SSR LEXIS 5, *11; <u>see also</u> <u>Cichocki v. Astrue</u>, 729 F.3d 172, 176 (2nd Cir. 2013) (per curiam). Only after that "function-by-function" analysis has been completed may an RFC "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." <u>Mascio</u>, 780 F.3d at 636.

In <u>Mascio</u>, the Fourth Circuit joined other circuits by declining to adopt a "*per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" <u>Mascio</u>, 780 F.3d at 636 (quoting and citing <u>Cichocki</u>, 729 F.3d at 177). However, the court found that remand may otherwise be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" <u>Id.</u>

(quoting <u>Cichocki</u>, 729 F.3d at 177 (emphasis supplied)).

The <u>Mascio</u> court also "agree[d] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (internal quotation omitted). "The ability to perform simple tasks differs from the ability to stay on pace. Only the later limitation would account for a claimant's limitation in concentration, persistence or pace." <u>Id.</u> Where the Court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform [the] relevant functions" identified in the ALJ's RFC, then remand is appropriate. <u>Id.</u> at 637.

      ii.     THE ALJ'S RFC DETERMINATION FAILS TO ACCOUNT FOR PLAINTIFF'S MENTAL IMPAIRMENT AND RELATED LIMITATIONS

At the outset, the Court notes that the ALJ did not perform an explicit "function-by-function" analysis of Plaintiff's physical or mental limitations. Instead, the ALJ merely stated Plaintiff's RFC in a conclusory heading and followed his statement with an independent discussion of the medical record without relating the discussion back to the explicit functions ascribed to the Plaintiff in the RFC determination. [Doc. No. 12-3] at pp. 16-19. While this practice somewhat frustrates this Court's review of the ALJ's decision and should not be encouraged, the ALJ's failure to conduct an explicit analysis of the Plaintiff's physical/mental limitations and functional capabilities is – taken alone – not enough to require remand. <u>See</u> <u>Mascio</u>, 780 F.3d at 636. Rather, the Court must review the ALJ's discussion of Plaintiff's medical record and determine whether the medical record, as discussed by the ALJ, provides a sufficient basis to meaningfully review the ALJ's RFC conclusions, and, ultimately, deduce whether his RFC determination is supported by substantial evidence in the record.

In his written decision, the ALJ reviewed a variety of the Plaintiff's medical records and compared their findings. In his discussion, the ALJ observed and found that Plaintiff was diagnosed with bilateral knee degenerative joint disease (which includes degenerative arthritis of both his knees), gout, and obesity. [Doc. No. 12-3] at pp. 16-17. He had previously accorded these diagnoses "substantial" weight for the purpose of determining whether Plaintiff suffered from "severe" physical impairments in the step-two analysis. Id. at p. 15. Having found that Plaintiff suffered from these "severe" impairments, the ALJ reviewed the medical record for evidence demonstrating whether they limit Plaintiff's functional capabilities in any meaningful way.

Despite being diagnosed with these "severe" impairments, the ALJ found that Plaintiff has had no surgical interventions since November 2002, does not employ ambulatory devices to assist with his mobility, and has been prescribed a conservative regimen of medicinal (injected and oral anti-inflammatories) and physical/diet/exercise therapies to treat his impairments. [Doc. No. 12-3] at pp. 17-18. The ALJ also found that the severity of Plaintiff's gout symptoms depend, in large measure, upon the Plaintiff's compliance with his medications, the effectiveness of any necessary adjustments to his medicinal regimen, and his ability to adhere to the physical therapies and exercise/diet recommendations of his physicians. Id. at p. 17.

The ALJ also relied on the medical records provided by Drs. Hillman and Jaffe, which indicate that the Plaintiff's gait, muscle, and vascular examinations have consistently been normal and that Plaintiff is able to ambulate "without pronounced difficulty." [Doc. No. 12-3] at p. 17. Those same medical records, on which the ALJ relies, show that Plaintiff is capable of moving on furniture without pronounced difficulty, has good range of motion in all the joints of his hands, is able to perform successfully a straight leg test both in a sitting and supine position, demonstrates a strong grip without problems with dexterous activity, and demonstrates normal motor strength

in all four of his extremities. [Doc. No. 12-8] at pp. 101-102. The ALJ also relied upon the opinion of Dr. Babich, a doctor to whom the ALJ afforded great weight. Id. Based on Dr. Babich's opinion, the ALJ found that Plaintiff's gout and obesity impairments should "stop occurring" if he adheres to the recommended treatments of his physicians. Id. The ALJ also found that, while Plaintiff's right wrist suffers from intermittent gout attacks and "retains crepitus," it is still capable of both fine and gross hand movements. Id. at p. 18. Finally, the ALJ found that medical evidence shows Plaintiff's wrists exhibit normal range of motion and grip. Id.

Purportedly considering the entire record, the ALJ made a factual finding that the Plaintiff is capable of performing "light work," as defined by regulation. See 20 C.F.R. §§ 404.1567(b); 416.967(b). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Id. The ALJ limited the Plaintiff's ability to physically perform "light work" as follows:

> [Plaintiff] is limited to occasional climbing, balancing, stooping, crouching, kneeling and crawling. Further he is limited to no concentrated exposure to hazards such as moving machinery or unprotected heights. Finally, the claimant is limited to "unskilled" work.

[Doc. No. 12-3] at p. 16. The ALJ posited a substantially similar hypothetical to the vocational expert at Plaintiff's hearing, which resulted in the vocational expert testifying that "other work" existed in sufficient numbers in the national economy such that Plaintiff could not pass the step-five analysis. See [Doc. No. 12-3] at pp. 40-42.

Noticeably absent from the ALJ's discussion of Plaintiff's functional limitations is *any* mention of the mild limitations on Plaintiff's activities of daily living, ability to maintain social

function, and ability to maintain concentration, persistence or pace, which the ALJ previously recognized in his step-two analysis. [Doc. No. 12-3] at pp. 15-16. During that analysis, the ALJ determined that Plaintiff has a "medically determinable mental impairment of depression," which was diagnosed during a consultative evaluation with Dr. Hillman. [Doc. No. 12-3] at p. 15. The ALJ determined that Plaintiff's depression caused mild limitations as to Plaintiff's activities of daily living, his ability to maintain social function, and his ability to maintain concentration, persistence or pace. Id. The ALJ discounted Plaintiff's depression diagnosis by observing that Plaintiff has not been referred to or sought mental health treatment. Id. at p. 16. While still conducting his *step-two* analysis, the ALJ also determined that Plaintiff's mild limitations will only minimally affect the Plaintiff's ability to perform "basic mental work activities," though the ALJ cited no supporting evidence for this conclusory determination and nothing was said about the effect on Plaintiff's ability to perform "physical" work activities. Id. at p. 15. As a result, the ALJ determined Plaintiff's depression to be "nonsevere." Id.

Critically, however, the ALJ acknowledged that his "step-two" analysis is *not* a substitute for a thorough and specific RFC review, which requires a "more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (S.S.R. 96-8p[, 1996 SSR LEXIS 5])." [Doc. No. 12-3] at p. 16. Thus, the ALJ understood that his step-two analysis does not sufficiently consider the effect of Plaintiff's depression on "[w]ork-related mental activities generally required by competitive, remunerative work[, which] include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p, 1996 SSR LEXIS 5. Further, the ALJ's statement concedes that his step-two analysis

does not consider the "combined effect" that the Plaintiff's depression and other "severe" impairments have on his ability to engage in mental and physical work-related functions. See Hines, 872 F.2d at 59. While the ALJ represents that his "residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," [Doc. No. 12-3] at p. 16, the Court is unable to locate the ALJ's "more detailed assessment" anywhere in his written decision. See [Doc. No. 12-3] at pp. 16-19. Indeed, it appears to the Court that the ALJ omitted this "detailed assessment" from his decision entirely, despite the fact that the ALJ purportedly considered it *necessary* to his analysis. [Doc. No. 12-3] at p. 16 (stating that the RFC used at steps four and five of the sequential evaluation process "*requires* a more detailed assessment" than the one conducted at step-two (emphasis supplied)).

By finding in step-two that Plaintiff suffers from mild limitations in the above-discussed areas, the ALJ admitted that facts exist which correlate with a limitation on the Plaintiff's ability to stay on task and possibly perform other work-related functions. See Wedwick v. Colvin, 2015 U.S. Dist. LEXIS 105065, *58 (E.D.Va. 2015) ("As Mascio points out, admitting a limitation in concentration, persistence and pace correlates to a limitation in ability to stay on task, one that the ALJ neither posed to the [vocational expert], nor included in his assessment."). Nevertheless, in crafting Plaintiff's RFC and in preparing his written decision, the ALJ failed to explain whether Plaintiff's mild limitations translated into an *actual* functional limitation. This failure appears to be in direct conflict with the Mascio court's opinion, which held as follows:

[On remand,] [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (citation omitted). The ALJ's "boilerplate" assertion that the RFC

"reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" is insufficient to satisfy the Mascio standard. While it may very well be the case that the ALJ found Plaintiff's mild limitations do *not* translate into a functional limitation on his ability to work, the ALJ's failure to affirmatively state his finding somewhere in his written opinion requires remand under Mascio. See Reinhardt v. Colvin, 2015 U.S. Dist. LEXIS 50952, *8 (W.D.N.C. 2015) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered.").

The Court is not persuaded by the Defendant's arguments against remand. First the Defendant argues that remand is not in order because this case involves "mild" limitations on Plaintiff's activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace, whereas Mascio involved limitations resulting from "severe" impairments. [Doc. No. 25] at p. 5. However, Defendant's argument is without merit. Chiefly, since Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from "mild" or "moderate" limitations in his or her activities of daily living, social functioning, and ability to maintain concentration, persistence or pace and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required. See, e.g., Reinhardt v. Colvin, 2015 U.S. Dist. LEXIS 50952, *6-9 (W.D.N.C. 2015) (ordering remand where the ALJ acknowledged claimant had "mild" limitations resulting from a medically determinable impairment at the stage-two analysis, but failed to account for such finding in his formulation of that claimant's RFC); see

also <u>Volrath v. Colvin</u>, 2015 U.S. Dist. LEXIS 119095, *5-8 (W.D.N.C. Sept. 8, 2015); <u>Jones v. Colvin</u>, 2015 U.S. Dist. LEXIS 106622, *11-19 (E.D.N.C. Aug. 13, 2015) <u>Franklin v. Colvin</u>, 2015 U.S. Dist. LEXIS 96876, *6-11 (W.D.N.C. July 24, 2015); <u>Faulkner v. Colvin</u>, 2015 U.S. Dist. LEXIS 99704, *6-9 (W.D.N.C. June 12, 2015); <u>Scruggs v. Colvin</u>, 2015 U.S. Dist. LEXIS 62779, *8-15 (W.D.N.C. May 13, 2015); <u>Raynor v. Colvin</u>, 2015 U.S. Dist. LEXIS 45977, *2-7 (E.D.N.C. Apr. 7, 2015); <u>Salmon v. Colvin</u>, 2015 U.S. Dist. LEXIS 43334, *4-7 (M.D.N.C. Apr. 2, 2015).

Additionally, Defendant's argument must fail because it conflicts with the ALJ's duties under applicable regulations and case law. In his written opinion, the ALJ analyzed Plaintiff's mental impairment and "mild" limitations only in his step-two analysis. [Doc. No. 12-3] at pp. 15-16. "[T]he step-two inquiry is a *de minimis* screening device [designed] to dispose of groundless claims." <u>See</u>, <u>e.g.</u>, <u>Gibson v. Colvin</u>, 2015 U.S. Dist. LEXIS 120352, *19 (D. Md. Sept. 9, 2015) (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)); <u>Chappell v. Colvin</u>, 2014 U.S. Dist. LEXIS 15507, *11-12 (M.D.N.C. 2014). Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." <u>Gibson</u>, *supra*, at * 19. At the step-four analysis, an ALJ must engage in a "detailed assessment" of the Plaintiff's work-related functions as limited by all of the Plaintiff's impairments – both "severe" and "nonsevere." S.S.R. 96-8p, 1996 SSR LEXIS 5, *13-15. Further, the ALJ must consider the "cumulative effect" of all of the Plaintiff's impairments, which standing alone may not "significantly limit an individual's ability to do basic work activities" but when considered together may be "critical to the outcome of a claim." <u>Id.</u> at *14-15; <u>see</u> <u>also</u> 42 U.S.C. § 423(d)(2)(B); <u>Hines</u>, 872 F.2d at 59.

Here, the ALJ only conducted a step-two analysis of the Plaintiff's mental impairment and resulting limitations, which is improper. Further, the ALJ utterly failed to discuss any "cumulative

effect" such limitations may have on his RFC when they are considered in conjunction with Plaintiff's "severe" impairments of degenerative joint disease, gout, and obesity. While Mascio may have dealt with more severe limitations and/or mental impairments, this is not enough to diminish the ALJ's duty to explain his reasoning and findings under the law.

The Defendant also seems to suggest that the ALJ's RFC and hypothetical to the vocational examiner sufficiently account for Plaintiff's limitations and mental impairment by including a limitation for "unskilled" work. [Doc. No. 25] at pp. 5-6. To the extent the Defendant makes this argument, it is meritless. The Mascio court explicitly found that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (internal quotation marks omitted)). Here, the ALJ's RFC for Plaintiff contains a limitation to "unskilled" work; however, in light of Mascio, this limitation cannot incorporate Plaintiff's mental impairment or his limitations arising therefrom.

Defendant next argues that the record lacks supporting evidence for Plaintiff's mental impairment. [Doc. No. 25] at p. 6. However, this argument is a red herring. At step-two, the ALJ made a factual finding that the Plaintiff suffers from a mental impairment and resulting limitations. [Doc. No. 12-3] at pp. 15-16. Thus, despite the Defendant's "sufficiency of the evidence" argument, the ALJ ostensibly considered the evidence sufficient to warrant discussion and a factual finding of the impairment's existence. In reviewing the ALJ's decision, the Court cannot "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation marks omitted). Whether or not the ALJ's finding on this factual issue is based on compelling or convincing evidence is not for this Court to decide on review; rather, this Court can only review whether the

decision is supported by substantial evidence – which the Court finds that it is. See [Doc. No. 12-3] at p. 15 (finding Plaintiff to suffer from a medically determinable mental impairment and resulting limitations based on being "diagnosed with depression during a consultative evaluation" and corresponding opinions from state psychological consultants). Thus, because the ALJ found that Plaintiff has a mental impairment and resulting limitations, he must comply with Mascio and discuss it in his RFC analysis.

Finally, the Court cannot conclude that the ALJ's failure in this regard constitutes harmless error. At the Plaintiff's hearing, the ALJ posed a first hypothetical to the vocational expert that conforms substantially to the RFC contained in his written decision. Compare [Doc. No. 12-3] at pp. 40-41 with [Doc. No. 12-3] at p. 16. This hypothetical resulted in the vocational expert opining that "other work" existed in which the Plaintiff is capable of engaging. [Doc. No. 12-3] at pp. 41-42. However, the ALJ did not stop there; rather, he asked Plaintiff if he suffered from any mental health issues, to which the Plaintiff replied that he suffers from depression. [Doc. No. 12-3] at p. 42. Appearing to credit this response, the ALJ posed a second hypothetical to the vocational expert. [Doc. No. 12-3] at p. 42. He posed as follows:

> Let's further assume that the person may have medical problems that would likely result in being off task due to medical problems for up to 20 percent or at least 20 percent of the time, and that this would be unpredictable when this would occur. Would this preclude competitive employment?

[Doc. No. 12-3] at p. 42. To which the vocational expert replied:

> Yes, sir, it would. I think particularly at the unskilled level that would preclude employment.

Id. The vocational expert did not testify whether such a limitation would preclude Plaintiff from performing "other work" to a greater degree than already assessed. Id. Rather, the hearing was immediately terminated with no other findings made. Id. at pp. 42-43. The ALJ did not include

this second hypothetical in his written RFC determination nor did he explain why it was excluded. [Doc. No. 12-3] at pp. 16-19.

The Court finds that this exchange illustrates the error in the ALJ's written RFC assessment. At the hearing, the ALJ appeared to credit the Plaintiff's mental impairment and posed a hypothetical to the vocational expert which appeared to account for what he believed to be the limitations arising from that impairment. The vocational expert then testified that such a limitation would "likely" preclude competitive employment, particularly at the "unskilled" level – which is precisely the level at which the ALJ's prior hypothetical and RFC assessment confined the Plaintiff. However, the vocational expert did not testify whether this additional limitation would preclude Plaintiff from being able to do any or all of the "other work" she previously identified as being available in response to the first hypothetical. In his written decision, the ALJ did not explain why this additional limitation was not included in the RFC. On review, this Court is unable to discern any reason as to why the additional limitation was excluded or whether the additional limitation, if included, would have resulted in the Plaintiff being found "disabled" under the statute. Thus, the Court is unable to meaningfully review the ALJ's RFC assessment. For this reason, as well as the others discussed above, a remand is in order.

2.      *Plaintiff's Other Assignments of Error*

Because the Court has determined that Mascio warrants remand due to the ALJ's failure to properly explain his RFC determination in light of his findings regarding Plaintiff's mental impairment and related limitations, the Court will not address the Plaintiff's remaining arguments regarding Plaintiff's credibility or whether the ALJ's RFC is supported by a proper "function-by-function" analysis relating to Plaintiff's physical impairments. See, e.g., Diprospero v. Colvin, 2014 U.S. Dist. LEXIS 58612, *4 (W.D.N.C. 2014); Goode v. Colvin, 2014 U.S. Dist. LEXIS

164845, *8 (W.D.N.C. 2014); <u>Pullen v. Colvin</u>, 2014 U.S. Dist. LEXIS 58579, *8 (E.D.N.C. 2014); <u>Bartz v. Colvin</u>, 2014 U.S. Dist. LEXIS 55718, *8-9 (E.D.N.C. 2014), *adopted by* 2014 U.S. Dist. LEXIS 55717 (E.D.N.C. 2014); <u>Powell v. Astrue</u>, 2010 U.S. Dist. LEXIS 90000, *11-12 (E.D.N.C. 2010), *adopted by* 2010 U.S. Dist. LEXIS 80724 (E.D.N.C. 2010). To do otherwise would have this Court provide an impermissible advisory opinion on such issues. <u>See</u> <u>Schulte v. Colvin</u>, 2015 U.S. Dist. LEXIS 46962, *4 (D. Kan. Apr. 10, 2015); <u>Catlin v. Colvin</u>, 2014 U.S. Dist. LEXIS 87460, *5 (D. Kan. 2014); <u>see also</u> <u>Saterlee v. Astrue</u>, 450 Fed. App'x 753, 755 (10th Cir. 2011) ("Issues regarding the ALJ's extant credibility analysis may well be obviated by proceedings on remand, and we elect not to issue an advisory opinion on such matters."). Further, because a new RFC determination may be necessary or because the ALJ may further explain his original RFC determinations on remand, it would be a waste of judicial resources for the Court to issue a lengthy opinion on such matters when they may be mooted by further proceedings. On remand, the Plaintiff may, instead, make his other arguments to the ALJ and the ALJ may correct any perceived error on his or her own. <u>Schulte</u>, 2015 U.S. Dist. LEXIS 46962, *4; <u>Catlin</u>, 2014 U.S. Dist. LEXIS 87460, *5.

Indeed, the Court finds it particularly appropriate to abstain from issuing an advisory opinion on such issues considering the unique posture of this case. Here, the ALJ rendered his decision and it was reviewed by the Magistrate Judge prior to the Fourth Circuit's <u>Mascio</u> decision. Thus, the ALJ has not had an opportunity to comply with <u>Mascio</u>'s requirements in the first instance. The Court thinks the ALJ should have an opportunity to correct any additional errors on his or her own before any further review of his or her actions takes place. On remand, the ALJ will undertake further proceedings consistent with this opinion; notably, in compliance with <u>Mascio</u>'s requirements, the ALJ will discuss and make findings regarding whether Plaintiff's physical and/or

mental impairments allow him to perform the work-related functions indicated in the RFC for a full workday. See Mascio, 780 F.3d at 636-37 ("Here, the ALJ has determined what functions he believes Mascio can perform, but his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions. In particular, although the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday."); see also Wedwick v. Colvin, 2015 U.S. Dist. LEXIS 105065, *52-53 (E.D. Va. July 7, 2015) ("[Though] [t]he ALJ diligently and thoroughly discussed various aspects of Plaintiff's medical reports, . . . on the one issue that is specifically referenced in Mascio – the ability to function for an entire workday – the ALJ did not do a function-by-function analysis, or explain how his RFC took account of the relevant medical records.").

The Fourth Circuit has long held that the ability to perform sporadic daily activities is not inconsistent with a claim of disability. Totten v. Califano, 624 F. 2d 10 (4th Cir. 1980). Building on Totten, an ALJ must explain how he determined that performing a certain activity for a short period translates into an ability to perform a different activity for a full workday. Mascio, 780 F.3d 632, 636-37.

## IV.  DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1)     The Plaintiff's objections to the Memorandum and Report of the Magistrate Judge are **OVERRULED AS MOOT**;

(2)     The Memorandum and Report of the Magistrate Judge is **NOT ADOPTED**;

(2)     The Commissioner's Motion for Summary Judgment (Doc. No. 16) is **DENIED**;

(3)     Plaintiff's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**;

(4)     The final decision of the Commissioner ([Doc. No. 12-3] at pp. 13-20) is **VACATED**; and

(5)     This matter is **REMANDED** to the ALJ under Sentence Four with instructions to conduct a rehearing of the facts and issues and to reassess Plaintiff's residual functional capacity determination in accordance with this Order, <u>Mascio</u>, and <u>Totten</u>.

**SO ORDERED**.

Signed: December 21, 2015

Richard L. Voorhees
United States District Judge